## MAGNOLIA PETROLEUM CO. et al. v. HOLZ et ux. (No. 7836.)

Court of Civil Appeals of Texas. San Antonio. Nov. 2, 1927.

**1. Injunction ⬅⟿253—In suit on injunction bond, facts respecting loss of profits on transactions defeated by injunction held insufficient for jury.**

In action on injunction bond for damages arising from injunction against withdrawing certain money from bank, facts respecting defeat of purchase of land and oil and gas lease by injunction and consequent loss of profits *held* insufficient for jury.

**2. Injunction ⬅⟿251—To recover for profits lost because of injunction, clear showing is required.**

To recover on bond for damages arising from injunction against withdrawing money from bank, where damages are loss of profits on transactions concerning land and oil and gas lease, one must clearly show that transactions would have been consummated but for injunction, and that he probably would have made profits claimed.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Action on injunction bond, brought by Herbert Holz and wife against the Magnolia Petroleum Company and another. From a judgment in favor of plaintiffs, defendants appeal. Reversed and remanded.

Kampmann & Burney, of San Antonio, A. J. Wirtz, of Seguin, and Walace Hawkins, W. H. Francis, and A. S. Hardwicke, all of Dallas, for appellants.

Hertzberg & Kercheville, of San Antonio, for appellees.

SMITH, J. Herbert Holz and wife were the owners of an oil and gas lease upon 160 acres of land situated in Duval county, and belonging to E. C. Willmann. Holz and wife entered into a contract to sell and assign the lease upon 120 of the 160 acres to the Magnolia Petroleum Company for a cash consideration of $22,000. The lease contract contained a stipulation that the lessee pay the lessor a rental of "$160, or $1 an acre," on or before April 13, 1926, and provided for forfeiture of the lease in event of default in the payment on that date. Before the transfer of the partial lease from Holz and wife to the petroleum company, was finally consummated, the date the rental was required to be paid passed without the payment being made, and Willmann declared a forfeiture of the lease. Acting upon the contention that it was the duty of Holz and wife to pay the rental and avoid the forfeiture of the lease, the petroleum company brought suit against them for damages, and procured the issuance of an injunction restraining them from with-

drawing from the bank the money they had received from the petroleum company as consideration for the lease, and which they had deposited in the bank, and restraining the bank from paying over those funds to Holz and wife. The injunction was issued upon a bond in the sum of $25,000, which was executed by the petroleum company as principal and the American Indemnity Company as surety. The injunction remained in effect for a period of 16 days, when the order was dissolved by consent of the parties, and the suit was dismissed. Subsequently Holz and wife brought this action upon the injunction bond against the petroleum company and the indemnity company for damages alleged to have resulted to the plaintiffs because of the wrongful issuance of the injunction. The amount was laid at $22,000, but some of the elements of the alleged damages were eliminated from the case, while others were submitted to a jury, resulting in a judgment for plaintiffs against both defendants for $1,859.82. The petroleum company and the indemnity company have appealed.

It is first contended by appellants that under the facts of the case it appears conclusively that the injunction was not wrongfully issued, and that therefore appellees were not entitled to any damages, and the court should have directed a verdict for appellants. We have concluded, however, that this contention is not sustained by the record. We see no necessity for setting out the facts, which are voluminous and tediously arrived at. We conclude that upon the whole case we must sustain the trial court's holding that the injunction was wrongfully issued, albeit it was sought and issued under a state of facts which might well have induced that action from reasonably prudent persons placed as appellant petroleum company was at the time, whereby it was relieved of any suspicion that it may have acted with malice, or without probable cause.

Certain elements of damage alleged by appellees were stricken out upon exceptions in the court below, so that the case made by the surviving pleadings contemplated damages occasioned appellees as follows:

First. Interest at the rate of 8 per cent. per annum upon the impounded funds during the 16 days the injunction was in effect.

Second. Interest at a like rate upon the sum of $1,800, which appellees alleged they were forced to borrow on account of the enforced detention of said funds.

Third. Damages in the sum of $3,200, which appellees alleged they would have realized as profit from the purchase of 640 acres of land in Medina county, which purchase was defeated by reason of the enforced detention of their funds.

Fourth. Damages in the sum of $120, alleged loss of profits appellees would have

realized upon the purchase of an oil and gas lease upon 640 acres of land in Live Oak county, which purchase was defeated by reason of the injunction.,

[1] It is conceded by appellant that, if the injunction was wrongfully issued, it was proper to allow appellees interest upon the impounded funds during the period of detention, as well as upon the sum of $1,800 borrowed by appellees. The only remaining elements of damage upon which the jury returned a verdict embraced the items of loss of profits upon the alleged defeated purchases of the land in Medina county and of the lease in Live Oak county.

With reference to the proposed purchase of the Medina county land, it appears that appellees have never seen the land. They have never purchased any lands in that county, and know of no instance of a sale of lands therein. During the period the money in question was withheld from appellees, Herbert Holz was informed by an agent named Davenport that section 50, A. B. & M. survey, west of Hondo, in Medina county, could be purchased in fee for $10 an acre. Holz knew nothing personally of the property, and made no effort to ascertain any facts about it. He knew nothing of its immediate location or of the character of its topography, soil, or other qualities, or how much was in cultivation or was tillable. He did not know who owned it, knew nothing of the state of the title, or possession, or that the proposed vendor had any right or power to sell or convey it; he made no attempt to investigate any of these matters. He did not know how much cash would be required of him to handle the deal; so far as the record shows to the contrary, he could have secured the land with a $10 cash payment, or even without any cash payment. He simply heard through a stranger that such a tract was on the market at $10 an acre, that it was incumbered with a debt amounting to something like $4,000, which might be due within a few months, and he made up his mind that, if he had bought it at that price, he could have leased it to others for oil and gas purposes at $5 an acre, but, so far as the record shows to the contrary, it may have been incumbered at the time with an existing oil and gas lease, and therefore not subject to the lease he proposed to sell and make the profit he here sues for.

Appellee's knowledge of the lease which he proposed to purchase in Live Oak county was even more vague and conjectural than his knowledge of the Medina county property. He was told by an agent named Winters that a lease upon a section of land in Live Oak county was attached to a draft held in a San Antonio bank, and that, if he wanted the lease, he could get it for 75 cents an acre by taking up the draft. He knew

none of the parties to the lease, nor the names of the lessors or lessees, and, while he was informed by Winters that the lease was made upon the familiar "88" form, he did not know its date or duration, or the amount of the annual rental fixed in the contract, nor that the annual rental had been paid and the lease kept in force, nor did he know what drilling or forfeiture conditions were imposed upon the lessee. He knew nothing of the title to the land covered by the lease, nor whether the unknown lessor or assignor owned the property or lease, or had any right to lease the land or assign the lease thereon. He knew none of the essential facts or conditions of the proposition, and made no investigation thereof, but was content to rest his prospective case for damages upon the meager facts stated, as in the case of the proposed Medina county purchase.

[2] These facts are not sufficient. A person in appellee's situation, in order to recover loss of profits upon transactions defeated by an improper withholding of his funds, must show the existence of every condition essential to the consummation of such transaction, and that it would have been consummated but for the unlawful detention of his funds. It is not sufficient that he select opportunities for investment at random from those of which he simply hears, and, assuming without ascertainment of the true facts that he would have pursued them to the point of consummation had the funds been available to him, set them up in his own mind as elements of specific damage. He must go further and show clearly that, but for the wrongful impounding of his funds, he would actually have consummated the transactions, and that probably at least he would have made the profits claimed by him. The proof in this case falls far short of this requirement.

The judgment is reversed, and the cause remanded.